(67 South. 356)

No. 20436.

Succession of SERRES.

(March 2, 1914.  On the Merits, June 29, 1914. On Rehearing, Feb. 8, 1915.)

*(Syllabus by the Court.)*

On Motion to Dismiss.

1. APPEAL AND ERROR ⬮640—INCOMPLETE TRANSCRIPT—DISMISSAL.

Where a transcript of appeal is filed, from which several documents are missing, but the apellant obtains a writ of certiorari and completes the transcript within three days after the return day, the appeal will not be dismissed because of the incomplete transcript filed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2788, 2829; Dec. Dig. ⬮640.]

2. APPEAL AND ERROR ⬮660—COMPLETION OF TRANSCRIPT—CERTIORARI—DISMISSAL OF APPEAL.

The fact that one applying for a writ of certiorari to a lower court to complete a transcript does not allege that it is not his fault that the transcript is incomplete is no reason for setting aside the writ and dismissing the appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2829, 2844–2847; Dec. Dig. ⬮660.]

On Rehearing.

3. WILLS ⬮525—CONSTRUCTION—BEQUEST.

Where the testator declares that the first legatee is his only child and that he gives and bequeaths to her all that the law requires, and gives the balance of his estate to her and another legatee jointly, the first bequest is of the third of the estate reserved to an only child as a forced heir.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1129–1139; Dec. Dig. ⬮525.]

4. BASTARDS ⬮13—LEGITIMIZATION—WILLS.

The testator's acknowledgment, in a nuncupative will by public act, that the legatee is his child, is a sufficient acknowledgment to convert an illegitimate legatee from a bastard into a natural child, entitled to receive by the will one-fourth of the testator's estate if he leaves only legitimate ascendants or brothers or sisters or descendants of brothers or sisters, or one-third of his estate if he leaves only more remote collateral relations.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 16, 17; Dec. Dig. ⬮13.]

5. WILLS ⬮229 — CAPACITY OF LEGATEE — RIGHT TO OBJECT.

A legatee who is not a relation of the testator has no right to question the capacity of a colegatee to receive under the will on the ground of illegitimacy.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 550–554; Dec. Dig. ⬮229.]

Provosty, J., dissenting in part.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Succession of Jean Serres.  From a judgment sustaining exceptions to petition of Mrs. Catherine Dautch Bordes, she appeals.  Affirmed on rehearing.

See, also, 135 La. 1005, 66 South. 342.

Dufour & Dufour, of New Orleans, for appellant.  C. C. Friedrichs and Harold A. Moise, both of New Orleans (W. S. Parkerson, of New Orleans, of counsel), for appellee.

On Motion to Dismiss Appeal.

BREAUX, C. J.  [1] On motion to dismiss appeal taken by Mrs. Catherine Dautch Bordes.

The gravamen of the motion is that defendant in motion does not have the least ground for an appeal; in the second place, that a party to an appeal, intending to use the record upon which a former appeal has been taken, should obtain the court's permission on motion.  Lastly, that the appeal bond is insufficient.

There was neglect and oversight in confecting the record of appeal, and, while there was cause of complaint at first on the part of the appellee, the documents not copied at first in the transcript have since been copied, and the copies now form part of the transcript.  The copies were brought up to this court in due time.  The transcript was filed in this court on the 28th day of January, 1914.  The motion to dismiss the appeal be-

cause of want of copies of the proceedings was filed on the 30th day of the same month, and, on the day following, the clerk of court made his return and produced the following copies, which he annexed to and attached as part of the transcript.

(1) Motion of Mrs. Catherine Dautch Bordes and Pierre Bordes.

(2) Petition for registry and execution of will for confirmation of executor for letters, for an inventory and order of said petition.

(3) Exception to petition of Mrs. Catherine Dautch Bordes.

(4) Judgment sustaining exception.

(5) Reasons for judgment.

(6) Notarial will.

If copies are filed in due time, there is no good ground to have the appeal dismissed.

As these documents were filed within three days after the transcript had been filed, from no point of view can the appeal be dismissed.

The original transcript, although defective, was amendable. Had it been defective so as not to be a record at all, a complete transcript might have been filed at the date that the copies before mentioned were filed.

The appeal was made returnable by the district trial judge on the 28th day of January, 1914. We have seen that the copies, a list of which is given above, were filed within the three days after the return day. That was all-sufficient.

The appellant, in order to meet objection urged by plaintiff in motion to dismiss the appeal, obtained a writ of certiorari to complete the record.

[2] The appellee objects and asks that no effect be given to the writ issued to the clerk to complete the record because, as alleged by appellee, appellant did not set out the grounds which show that the irregularities in the transcript arose through no fault on his part.

The clerk had delivered a transcript which was duly filed with the certificate sufficiently full, as it referred to another case on appeal, owing to the fact, we infer, that appellant desired to use another transcript already filed.

It did not contain certain copies. Appellant, doubtless fearing that his appeal would be dismissed, filed the copies in due time, and, in addition, sued out a writ of certiorari. Although he did not allege that it was not his fault that the transcript was not complete, there was nothing to give rise to the inference that he was at fault, as charged by the appellee.

The writ of certiorari was issued and has been executed; the papers are all before the court and were all timely filed. We therefore cannot dismiss the appeal.

For reasons stated, it is ordered, adjudged, and decreed that the motion to dismiss is overruled.

### On the Merits.

PROVOSTY, J. The decedent made his will providing as follows:

"I, Jean Serres, declare that I was married twice, once to Anna Dautch, now deceased. We had three children. Two died without issue. The living child is Marie Serres, wife of Louis Bordes. And my second wife, born Barbara Cook, lived with me, and has been unheard from for about twenty-five years, and I had no issue from said marriage.

"I give and bequeath to my daughter Marie Serres, wife of Louis Bordes, all that the law requires, and the balance of my estate, I give and bequeath to my daughter Marie Serres, wife of Louis Bordes, and Catherine Dautch, wife of Pierre Bordes."

Mrs. Catherine Dautch, wife of Pierre Bordes, has brought this suit to have the court decree that the separate legacy to Marie Serres, wife of Louis Bordes, is inoperative; and that, as a consequence, the whole estate has passed to herself and Marie Serres Bordes jointly under the bequest of "the balance of my estate." Her contention, duly covered by allegations of her petition, is that Marie Serres Bordes was an illegitimate child, to whom the law did not "require" the

testator to bequeath anything; and that therefore, by giving her "all that the law requires," he gave her nothing.

An exception of no cause of action was sustained by the trial court, and the plaintiff has appealed.

In support of this exception, the defendant, Mrs. Marie Serres Bordes, contends that the plaintiff is without standing to sue for the reduction of said donation; that only forced heirs can sue for the reduction of a testamentary donation. C. C. 1504; Succession of Desina, 123 La. 469, 49 South. 23. And, again, that the plaintiff shows no pecuniary interest in the present suit, and that a person without a pecuniary interest cannot maintain an action. And, finally, that the subsequent marriage of her parents and the acknowledgment which her father made of her in his will had the effect of legitimating her.

The first of these contentions loses sight of the distinction between a suit in reduction of a donation, and a suit, such as the present, where the object is to have the court decree that no donation at all has been made. A suit in reduction of a donation is predicated upon some right in existence at the time the donation was made, and which has been violated by the donation. This happens when the testator has disposed of more than the law allows him to dispose of. The instant suit is predicated upon the alleged fact that no donation at all has been made. It is merely a suit to have the will interpreted. Its theory is that this will must be interpreted as if, instead of reading, I bequeath "all that the law requires," it read, I bequeath nothing. That, as the law requires nothing to be given, the giving of all that the law requires is the giving of nothing. That the will must be interpreted as if it read: I give my estate jointly to Marie Serres and Catherine Dautch, except in so far as the law may have made it obligatory upon me to give a certain portion to Marie Serres Bordes.

The contention that the plaintiff in this suit shows no interest is a begging the question. Success in the present suit would increase her legacy by one-half of the legacy she is attacking.

We pass, then, to the third contention of defendant, that she was legitimated as an effect of the subsequent marriage of her parents and of the acknowledgment which her father made of her in his will.

Articles 198 and 200 of the Code read as follows:

"Art. 198. Children born out of marriage, except those who are born from an incestuous or adulterous connection, may be legitimated by the subsequent marriage of their father and mother, whenever the latter have legally acknowledged them for their children, either before their marriage by an act passed before a notary and two witnesses, or by their contract of marriage itself."

"Art. 200. A natural father or mother shall have the power to legitimate his or her natural children by an act passed before a notary and two witnesses, declaring that it is the intention of the parent making the declaration to legitimate such child or children."

Under the first of these articles, the acknowledgment must have been made "either before their marriage by an act passed before a notary and two witnesses, or by their contract of marriage itself." This was not done in this case.

Under the second of these articles, the acknowledgment must have been made by a notarial act in which the father has declared that it is his intention to legitimate the child. The will in the instant case was by notarial act, but it does not contain the declaration that it was the intention of the testator to legitimate the child. It makes no declaration at all on the question of illegitimacy. It does not declare that the defendant was born in wedlock; and, as the testator knew the contrary (if we take the allegation of plaintiff's petition for true, which must be done for the purpose of the trial of

this exception of no cause of action), we must assume that he either did not intend to be understood as declaring that the child was legitimate; or, if he so intended, then, that he was under the mistaken impression that a child born before marriage became legitimate as an effect of the subsequent marriage. The supposition that he was under that impression is rendered probable by the fact that, as appears by the will, he was under the impression that the law required him to dispose of a certain portion of his estate in favor of defendant. But the fact remains that this will makes no express declaration either of the legitimacy of defendant or of an intention to legitimate her. The nearest it comes to making this declaration is that it gives rise to the inference that the testator was under the impression that his subsequent marriage had legitimated her, and that he therefore considered her to be legitimate.

But if this will had contained the most formal and express declaration that the child was legitimate, this would not have fulfilled the requirement of said article 200. The requirement of that article is, not that the parent shall declare the child to be legitimate, but that he shall declare his intention to legitimate the child.

There is quite a difference, psychologically, between the acknowledgment, or declaration, that a certain condition of things exists, and the expression of a desire, or intention, to bring about the existence of a certain condition of things. A father might, as a truthful person, have to admit the legitimacy of a child, whom, if illegitimate, he might be entirely unwilling to legitimate. But, putting that aside, as being more or less of a refinement, and dealing with this case broadly from the standpoint of the interpretation which our jurisprudence has placed upon said article 200, we do not think that the expressions of this will can be held to fulfill the requirement of said article. In the case Succession of Llula, 41 La. Ann. 90, 6 South. 556, this court said:

"In Dupre v. Caruthers, 6 La. Ann. 156, it was said, in alluding to the intention of the Legislature in adopting the articles of the Code relating to the acknowledgment and legitimation of children born out of marriage: * * * But we know the objects of the Legislature: In the first place, to honor matrimony, which is of such incalculable importance to society; and, in the next place, to discourage concubinage, which is the cause of much dissoluteness and evil. To prevent it the Legislature held out the strongest motive which can influence a parent—the legal disinherison of his offspring, unless he avows his shame before a notary public and witnesses, or in the face of the church.
"The object of the law was fully carried out when Joseph Llula, obeying those strong motives alluded to by the court, appeared before E. A. Peyroux, notary public, avowed his shame publicly in the presence of two witnesses, and then and there, still further obeying his strong natural impulses, legitimated his daughter, thus removing, as the reward of his public avowal, the stain of illegitimacy from his daughter Louisa, and giving her the rights in law of a child born in wedlock."

This is the interpretation which, rightly or wrongly, this court has heretofore, in these two sharply contested cases, placed upon this article, and it will now be for the Legislature to change this article if a different effect is desired to be given to it.

The judgment appealed from is therefore set aside; and the exception of no cause of action is overruled; and the suit is remanded, to be proceeded with according to law. Mrs. Marie Serres Bordes to pay the costs of this appeal.

### On Rehearing.

O'NIELL, J. [3] After a careful reconsideration of this case, we have concluded that this will is not to be interpreted as if the testator had said:

"I give my estate jointly to Marie Serres Bordes and Catherine Dautch Bordes, except in so far as the law makes it obligatory upon me first to give a certain portion to Marie Serres Bordes."

If the testator had thus declared merely that Marie Serres Bordes was his only child and as such was entitled (under article 1493 of the Civil Code) to one-third of his estate, that declaration would not have been a bequest to Marie Serres Bordes; and if, as the plaintiff alleges, she was not legitimate nor legitimated, her father's declaration that she was entitled to inherit one-third of his estate would avail her nothing under the law. But the testator did not stop at the statement that Marie Serres Bordes was his only child, and that he was forbidden to dispose of her legitimate portion of his estate. He went further and said:

"I give and bequeath to my daughter, Marie Serres, wife of Louis Bordes, all that the law requires, and the balance of my estate I give and bequeath to my daughter, Marie Serres, wife of Louis Bordes, and Catherine Dautch, wife of Pierre Bordes."

If the allegations of the plaintiff's petition are true, the law did not require the testator to give Mrs. Marie Serres Bordes anything. But what difference does that make if the law did not forbid him to give her two-thirds of his estate? As a matter of fact, the law does not require a testator to give a portion of his estate to his legitimate child. The law only requires him to reserve the portion due to the legitimate child. Hence if the testator had merely reserved the portion which he thought Mrs. Marie Serres Bordes was entitled to inherit as a forced heir, her right to inherit it would depend upon whether she is or is not in fact a forced heir.

If Mrs. Marie Serres Bordes was born before the marriage of her mother to the testator, he knew it. Hence it must be assumed that the testator believed that his subsequent marriage to the mother of Mrs Marie Serres Bordes had the effect of legitimating his daughter; or it may be that he desired merely to acknowledge her to be his child, without making any allusion to the fact that she was born before his marriage to her mother.

Whatever may have been in the mind of the testator regarding the status of the legatee whom he acknowledged to be his only child, we must interpret the bequest according to the rules of construction, and then determine whether the plaintiff has a right to contest it.

Article 1712 of the Civil Code provides:

"In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament."

To hold that the expression, "I give to my daughter all that the law requires," must be interpreted as a gift of nothing, because the law required the testator to give her nothing, would be adhering too rigidly to the terms of the testament and departing entirely from the manifest intention of the testator. A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none. R. C. C. 1713. From the subsequent bequest of the balance of his estate, it is plain that the testator intended the first bequest to be of something —not nothing. And from the declarations made by the testator as a preface to the disposing clauses of his testament, we are forced to the conclusion that he intended the first bequest to be a legacy of the portion of his estate which an only child would be entitled to inherit as a forced heir. That declaration was:

"I, Jean Serres, declare that I was married twice, once to Anna Dautch, now deceased. We had three children. Two died without issue. The living child is Marie Serres, wife of Louis Bordes. And my second wife, born Barbara Cook, lived with me, and has been unheard from for about twenty-five years, and I had no issue from said marriage."

Then immediately follows the will, viz.:

"I give to my daughter, Marie Serres, wife of Louis Bordes, all that the law requires; and the balance of my estate, of all kind and nature, I give and bequeath, share and share alike, to my daughter, Marie Serres, wife of Louis Bordes, and Catherine Dautch, wife of Pierre Bordes."

That was the same as to say: I give to my daughter all that the law requires me to reserve for her as a forced heir.

We would not be justified in assuming that the testator would not have given his daughter the portion of his estate reserved to her as a forced heir if the testator had not believed that she was a forced heir, because, if she was born before the marriage of her parents, her father knew it, and therefore did not make the bequest to her, under an error of fact. We must also assume that he knew the law or had legal advice. If, however, he made the bequest under the erroneous belief that she was legitimated by his marriage to her mother and was entitled to inherit one-third of his estate as a forced heir, we would yet have no right to assume that he would not have made the bequest to her except for his ignorance of the law. On the contrary, it must be assumed that he would not have acknowledged her as his child if he had not intended to give her the portion of his estate which the law would have reserved to her if she was his legitimate child.

Our conclusion is that the testator intended to give, and did give, to Mrs. Marie Serres Bordes what the law would have reserved to her if she was the legitimate daughter and forced heir of the testator— that is, one-third of his estate—and that he bequeathed only the remaining two-thirds of his estate to Mrs. Marie Serres Bordes and Mrs. Catherine Dautch Bordes; one-third to each.

Assuming—as we have to assume in deciding whether the plaintiff's petition discloses a cause of action—that the allegations are true that Mrs. Marie Serres Bordes is the daughter of Jean Serres and Anna Dautch, and that she was born before the marriage of her parents, we adhere to the opinion that the marriage of her parents did not legitimate her if she was not legally acknowledged by them, either by an act passed before a notary public and two witnesses before the marriage, or in the contract of marriage itself. R. C. C. 198; Succession of Vance, 110 La. 765, 34 South. 767; Landry v. American Creosote Works, 119 La. 231, 43 South. 1016, 11 L. R. A. (N. S.) 387.

[4] On the rehearing of this case, the plaintiff's counsel contend that the defendant is not only not a legitimated child, but that she is not even an acknowledged or natural child, and that she is therefore incapable of receiving anything under the testament of her father. Hence they argue that, under the doctrine of accretion, the plaintiff, as one of the universal legatees, is really entitled to the entire estate, although she is claiming only one-half of it. They refer to article 1707 of the Civil Code, which provides that legatees shall have the benefit of accretion when a legacy is bequeathed to several persons conjointly; and counsel rely upon the interpretation put upon this article of the Code in the case of Mackie v. Story, 93 U. S. 589, 23 L. Ed. 986, and by this court in Lebeau v. Trudeau, 10 La. Ann. 164; City of New Orleans v. Hardie, 43 La. Ann. 257, 9 South. 12; and Succession of Villa, 132 La. 714, 61 South. 765.

This proposition is untenable under the allegations of the plaintiff's petition. All that the law requires, to convert a bastard into a natural child, is that the child be acknowledged by his or her father by a declaration executed before a notary public and two witnesses, if it was not made in registering the birth or baptism of the child. R. C. C. 202 and 203. The rights conferred by such acknowledgment are not to be confused with the right to alimony, which alone an unacknowledged child may acquire by proof of his or her paternal descent, under article 209 of the Civil Code. This article only applies to illegitimate children who have not been legally acknowledged. R. C. C. 208. And the

declaration that proof of paternal descent may be made "by all kinds of private writings in which the father may have acknowledged the bastard as his child" leaves no other inference than that if the father had made such acknowledgment in a public act before a notary and two witnesses, instead of a private writing, the illegitimate child would then be a natural child, and not a bastard. The act in which Jean Serres declared and acknowledged that he and Anna Dautch had three children, of whom Mrs. Marie Serres Bordes was the surviving one, was executed in the presence of a notary public and three witnesses. He did not say whether she was born in or out of wedlock; and it was not necessary for him to declare that she was not born in wedlock, to confer upon her the rights of a natural or acknowledged child, whatever might have been necessary to legitimate her. What necessity can there be for Mrs. Marie Serres Bordes to prove her paternity, either by private writings or otherwise, since she has been legally acknowledged by her father in an act before a notary and two witnesses?

The plaintiff has not alleged in her petition that the defendant was not legally acknowledged. On the contrary, she alleged:

"That the said Mrs. Marie Serres, wife of Louis Bordes, is the illegitimate child of Jean Serres and Anna Dautch; that the said Marie Serres was born of the said parents several years before their marriage, and out of wedlock; and that the said Marie Serres was not legitimated by her said parents; * * * that the said Jean Serres, at his death, left no lawful ascendants or descendants; and that his estate is and forms a testamentary succession to be entirely disposed of under the terms and conditions of and in accordance with his last will and testament before Anthony J. Rossi, notary public, under date of August 1, 1911, which has been filed and registered herein; * * * that, in accordance with the terms and provisions of the said last will and testament of the deceased, Jean Serres, all of the property of which he died possessed is bequeathed and disposed of unto and in favor of your petitioner, Catherine Dautch, wife of Pierre Bordes, and Mrs. Marie Serres, wife of Louis Bordes, in equal proportions, share and share alike, except to such extent as the said

testator was and is required by law to bequeath any of his property to the aforesaid Marie Serres, wife of Louis Bordes; that said Mrs. Marie Serres, the illegitimate child of the said Jean Serres, is not a forced heir of the said estate of the said Jean Serres, and is therefore not entitled to any légitime in the estate of the said Jean Serres; that therefore the said Jean Serres was not required by law to give any portion of his estate to his said illegitimate child; that the disposable portion of his said estate is the entire estate; and that your petitioner, Mrs. Catherine Dautch, wife of Pierre Bordes, and Mrs. Marie Serres, wife of Louis Bordes, were and are jointly named and instituted the testamentary heirs of the deceased, Jean Serres, and as such each is entitled to an undivided one-half interest in all of the property, real, personal, and mixed, left by the deceased; and they should be recognized as such testamentary heirs and sent into possession of all of said property in the proportions aforesaid."

The plaintiff did not allege, in her petition, that Jean Serres left no brothers or sisters or descendants of brothers or sisters, or even more remote collateral relations. Under the provisions of article 1486 of the Civil Code, a natural child who has been acknowledged by his or her father may receive from him, by donation inter vivos or mortis causa, one-fourth of his property if he leaves legitimate ascendants or legitimate brothers or sisters or descendants from such brothers or sisters, and one-third if he leaves only more remote collateral relations. And the next following article provides that:

"In all cases in which the father disposes, in favor of his natural children, of the portion permitted him by law to dispose of, he is bound to dispose of the rest of his property in favor of his legitimate relations; every other disposition shall be null, except those which he may make in favor of some public institution."

The plaintiff alleges in her petition that the defendant has been recognized, by a judgment of the district court, "as the sole and only heir of her deceased parent, Jean Serres, and as such entitled to one-third of his estate, and also as testamentary heir under the last will and testament of the deceased (to use the terms of said judgment) 'for an additional portion of one-half of the remaining two-

thirds'; and that petitioner, Mrs. Catherine Dautch, wife of Pierre Bordes, was recognized as testamentary heir of the deceased, Jean Serres, and, as such, declared to be entitled to one-half of the said remaining two-thirds of the estate of Jean Serres." The judgment recognizing the defendant to be the owner of one-third of the estate as forced heir and recognizing the plaintiff and defendant to be entitled each to one-third as joint legatees is alleged to be made a part of the plaintiff's petition. And the prayer of the petition is that the aforesaid judgment be canceled and annulled, and that the plaintiff and defendant be recognized as the testamentary heirs of Jean Serres and be sent into possession, each as owner of an undivided half, of his estate.

[5] From the allegations and prayer of the petition, therefore, this may not be regarded as a suit for the reduction of a donation, which, under article 1504 of the Civil Code, can be sued for/only by forced heirs of the donor or testator. It is an attack upon the capacity of the defendant to inherit one-third of the estate as a forced heir of Jean Serres. Against such attack, article 974 of the Civil Code provides that the exclusion, either for cause of incapacity or unworthiness, shall not be sued for by others than the relations who are called to the succession in default of the unworthy heir or in concurrence with him. The plaintiff does not allege that she is a relation of the deceased, Jean Serres; and therefore does not disclose a right of action.

The judgment heretofore rendered by this court is set aside and annulled, and the judgment appealed from is affirmed.

MONROE, C. J. I concur in the decree.

PROVOSTY, J., dissents in so far as an interpretation is put upon the will different from that adopted in the original opinion; but otherwise concurs.